UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-CV-11414-RGS

MARK ALLEN CARTER

v.

MICHAEL J. ASTRUE, COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

MEMORANDUM AND ORDER ON
APPELLANT'S MOTION TO REVERSE OR REMAND
DECISION OF THE COMMISSIONER OF SOCIAL SECURITY

August 15, 2011

STEARNS, D.J.

Appellant Mark Carter seeks review of the final decision of the Commissioner of the Social Security Administration rejecting his application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI). *See* 20 C.F.R. § 404.1520(g). The issue on appeal is whether substantial evidence supports the Commissioner's decision that Carter is not disabled and is capable of performing his past relevant work. Carter timely filed this appeal pursuant to 42 U.S.C. § 405(g), seeking a reversal or remand of the Commissioner's decision. The court scheduled oral argument on Carter's appeal for August 3, 2011. Carter's attorney, however, failed to appear. The court will therefore decide the appeal based on the pleadings on file.

BACKGROUND

Carter applied for DIB and SSI benefits on August 5, 2008. He claimed a total disability as of June 1, 1983, which he attributed to a torn Achilles tendon.[1] The application was denied by the Social Security Administration on October 7, 2008, and again after reconsideration on May 5, 2009. Carter then requested a hearing before an Administrative Law Judge (ALJ).

On January 21, 2010, ALJ Stephen Fulton testimony from Carter and Carl Barchi, a vocational expert (VE). Judge Fulton issued his written decision, unfavorable to Carter, on March 12, 2010. The ALJ found that Carter had the residual functional capacity (RFC) to perform his past relevant work as a telemarketer, or do other available light work.[2] After the Decision Review Board denied Carter's request for a further review on June 15, 2010, the ALJ's decision became the final decision of the Commissioner.

MEDICAL HISTORY

Carter was born on April 28, 1957, and is currently fifty-four years old. He

---

[1] At the hearing before the ALJ on January 21, 2010, Carter amended the alleged onset date from June 1, 1983, to August 5, 2008.

[2] "Light" work involves lifting no more than 20 pounds at a time and the frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). The light work category includes work of a sedentary nature. *See* 20 C.F.R. § 202.00(a), 20 C.F.R. Part 404(P), App. 2.

completed the eleventh grade of high school and has a limited work history consisting of mostly part-time employment in low earnings jobs. Carter has not worked since 1998.

Carter claims he suffers from bursitis[3] in his left hip. However, an x-ray of the region in December of 2007 failed to show any substantially increased degenerative change. On presenting to an orthopedic surgeon in March of 2008, Carter rated his pain level as acceptable, assigning it a 5 on a 1-10 scale. On a return visit in October of 2008, he reported some hip pain and was given pain-relieving injections as well as a recommendation that he lose weight.

Carter also reports pain in his left shoulder resulting from a 2008 fall that resulted in a fracture to his humerus.[4] He was placed in a cast, but a comminuted (joining) displaced fracture of the mid-shaft of the humerus persisted. Carter alleges that he re-injured his left arm on November 15, 2008.

Carter received additional pain-relieving injections for "hip discomfort" in March of 2009. He complained of pain while walking, but a physical examination revealed a

---

[3] "Bursitis: Inflammation of a bursa (bursa: a closed sac or envelope lined with synovial membrane and containing fluid, usually found or formed in areas subject to friction)." *Stedman's Medical Dictionary*, 252, 254 (26th ed. 1995).

[4] "Humerus: The bone of the arm, articulating with the scapula above and the radius and ulna below. [L. shoulder]." *Id.* at 811.

normal range of motion in his lower extremities and no tenderness in the joints. An x-ray did not any show fracture, dislocation, or significant bone or joint abnormality.

In July of 2009, Carter began physical therapy, at which time his hip flexion, motor strength and control, and gait were normal. Carter told his treating physician that he had used a cane for two weeks prior to the appointment, but also stated that he volunteered 40 hours a week in a "clothing room" where he would fold, put away, and distribute clothes.

Carter was seen by his physician again in October of 2009. He complained of right shoulder pain, exacerbated by reaching or throwing motions, as well as Achilles tendon pain, intensified by walking. However, x-rays of Carter's ankle did not indicate any abnormality. A physical examination of Carter's left foot did not indicate any tenderness except when grasped. He was found to have a full range of motion with no pain in turning up his foot, no edema, and a muscle strength level of 5 out of 5. An examination of Carter's right shoulder also revealed a full range of motion with minimal amounts of pain at either end of the range, and no pain on palpitation. The x-ray revealed neither fractures nor dislocations, only a mild degenerative joint disease of the A-C joint at the top of Carter's right shoulder.

SOCIAL HISTORY

Carter has a long history of substance abuse. He first entered a rehabilitation

clinic in 1997. He maintained sobriety until 2008, when he suffered a relapse. He claims that he last used drugs on December 6, 2008, just prior to entering a sober house program. Carter suffers from substance abuse-related hepatitis C, which affects his liver function.

During 1997 and 1998, Carter worked part-time for the telemarketing firm Dial America in Warwick, Rhode Island, as part of a drug rehabilitation program. Carter currently resides at a veteran's shelter in Brockton, Massachusetts, where he participates in the "Regaining Insight through Self Evaluation" (RISE) program. He does not possess a driver's license. Through RISE, he participates in "work therapy" as a volunteer for five hours a day, twenty-five hours a week.

In his testimony before the ALJ, Carter reported constant pain in his left hip, left shoulder, and Achilles tendon. He complained of experiencing sharp pains in his hip while standing, compromised balance, and the need to sit before standing. He also testified that the pain in his Achilles tendon made it difficult for him to stretch or to walk comfortably for more than fifty yards. Carter stated that he cannot lift more than ten pounds at a time.

The ALJ also heard testimony from VE Carl Barchi. The VE testified to his belief that Carter is capable of performing sedentary and semi-skilled work similar to his past position as a telemarketer, but was hesitant to classify the telemarketing position

as "bonafide competitive employment."[5] R. at 35. The ALJ, in a hypothetical question to the VE asked that if the telemarketing position was "not past relevant work," whether there were other jobs in the national or regional economy that a person with limitations like Carter's could perform.[6] *Id.* The VE responded affirmatively, identifying available "unskilled employment . . . [such as] assembly, product, product inspection . . . [and] hand packaging." *Id.* He stated that there were roughly 830,000 jobs meeting this description in the national economy, as well as an additional 98,000 parking attendant positions that the hypothetical person could fill. Tr. at 36.

The ALJ then posed a hypothetical based on a person with a need for unscheduled breaks totaling an hour or more during an eight-hour work day.[7] The VE

---

[5] The VE stated, "If it's considered bona fide employment, yes, there would be no reason why that work could not be performed." *Id.*

[6] The ALJ posed, "Let me ask you to assume that we are talking about a person who is [54] years old . . . 11th grade education, and let's assume has the work history as a telemarketer. And first let me ask you to assume that this person could perform work at the light exertional level with only occasional pushing or pulling with the left lower extremity. And let's assume this person could only occasionally climb, balance, stoop, kneel, crouch, or crawl. With those abilities and limitations, could such a person perform Mr. Carter's past work?" *Id.*

[7] "Let's assume a person of the same age, education, work history, and let's assume this person could lift up to ten pounds, could stand or walk five minutes at one time, could sit five minutes at one time. Let's assume this person could only occasionally push or pull with the left lower extremity. Could only occasionally climb, balance, stoop, kneel, crouch, or crawl. And let's assume this person would require unscheduled breaks over an eight-hour period, or eight-hour day that total one hour.

6

testified that "the loss of an hour [and] taking unscheduled breaks would preclude sustained regular employment." *Id.*

THE ALJ'S DECISION

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 5, 2008, the application date. (20 C.F.R. § 416.971 et seq.)

2. The claimant has the following severe impairments: left trochanteric bursitis; obesity when considered in combination with the left hip bursitis; status post comminuted fracture of the left humerus. (October 2008) (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that the claimant can only occasionally push and/or pull with his left lower extremity and he can only occasionally climb, balance, stoop, kneel, crouch or crawl.

5. The claimant is capable of performing past relevant work as a telemarketer. This work does not require the performance of work related activities precluded by the claimant's residual functioning capacity (20 C.F.R. § 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since August 5, 2008, the date the application was filed (20 C.F.R. § 416.920(f)).

R. at 9-12.

DISCUSSION

---

With those abilities and limitations, could such a person perform Mr. Carter's past work?" Tr. at 36.

The findings of the Commissioner are conclusive so long as they are supported by substantial evidence and so long as the Commissioner has applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the Commissioner] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). The Commissioner's findings "are not[, however,] conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). On appeal, Carter argues that the ALJ's conclusion that he could perform his past relevant work as a telemarketer is not supported by substantial evidence.

Disability determinations follow a "sequential step analysis" mandated by 20 C.F.R. § 404.1520. The analysis requires that the ALJ first determine whether or not a claimant was gainfully employed prior to the onset of the disabling condition. At the second step, the ALJ must determine whether a claimant suffers from a severe impairment limiting his ability to work. If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of the

regulations, the claimant is presumptively deemed disabled. If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that his disability is sufficiently serious to preclude a return to his former occupation. If he meets that burden, the Commissioner at the fifth step is obligated to prove that there are other jobs in the national economy that the claimant is able to perform. *Gonzalez Perez v. Sec'y of HEW*, 572 F.2d 886, 888 (1st Cir. 1978) ("[A] claimant must establish that he can no longer perform his prior vocation before the government is obligated to prove that alternative employment is available for a person in claimant's condition.").

The ALJ found at Step 1 and Step 2 that Carter had not been engaged in substantial gainful activity since his claimed disability onset date of August 5, 2008, and that he suffers from the following severe impairments: bursitis, obesity, and a fracture of the left humerus.[8] The ALJ determined at step 3, however, that Carter's severe impairments did not rise to the level of a listed impairment as defined in 20 C.F.R. Part

---

[8] The following claimed ailments were determined by the ALJ to be non-severe: Carter's history of drug and alcohol abuse (reportedly in remission since December of 2008); depression; hypertension; headaches; possible diabetes mellitus; manual arthritis; hepatitis C; right shoulder degenerative disease; stroke; history of right Achilles repair; and left Achilles tendon issues. "There is no indication in the record that any of these impairments causes more than minimal limitation on the ability to perform basic work activity and therefore, they are not severe impairments." R. at 10.

9

404, Subpart P, Appendix 1. The ALJ therefore proceeded to Steps 4 and 5.

Steps 4 and 5 of the analysis necessarily require an assessment of a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(5). In evaluating RFC, the ALJ is required to follow a two-step process – first resolve whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the complained of pain or other symptoms; and if such an impairment exists, find the extent to which it limits the claimant's ability to do basic work activities. This latter decision requires an evaluation of the intensity, persistence, and limiting effects of the claimant's pain or other symptoms. *See id.* § 404.1545(a)(2)-(3).

At Step 4, the ALJ determined that Carter retained a sufficient RFC to perform light work as defined in 20 C.F.R. § 416.967(b), although limited in his ability to push and/or pull with his left lower extremity and climb, balance, stoop, kneel, crouch, or crawl. Although as the Commissioner concedes, Carter's employment as a telemarketer was erroneously classified by the ALJ as "substantial gainful employment" for purposes of Step 4, the VE went on to identify other light work in the national economy that Carter could perform. That testimony, coupled with the ALJ's well-supported conclusion that the objective medical evidence does not support Carter's contention that he is unable to work in *any* gainful occupation, substantially justifies his ultimate

determination that Carter is not disabled for the purposes of the Social Security Act.

ORDER

For the foregoing reasons, the decision of the Commissioner is <u>AFFIRMED</u>. The Clerk will now close the case.

                                              SO ORDERED.

                                              /s/ Richard G. Stearns
                                              _____
                                              UNITED STATES DISTRICT JUDGE